# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### FEBRUARY 1997 SESSION



FILED

**April 7, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | |
|---|---|
| **RONALD COLLIER,** ) | |
| ) | **C.C.A. NO. 02C01-9608-CC-00284** |
| Appellant, ) | |
| ) | **LAUDERDALE COUNTY** |
| VS. ) | |
| ) | **HON. JON KERRY BLACKWOOD,** |
| **STATE OF TENNESSEE,** ) | **JUDGE** |
| ) | |
| Appellee. ) | (Post-Conviction) |

FOR THE APPELLANT:         FOR THE APPELLEE:


**TROY L. BROOKS**
127 S. Third St.
Clarksville, TN 37040
   (On appeal)


**D. MICHAEL DUNAVANT**
Bank of Ripley Building,
P.O. Box 150
Ripley, TN 38063
   (At hearing)

**CHARLES W. BURSON**
Attorney General & Reporter

**DEBORAH A. TULLIS**
Asst. Attorney General
450 James Robertson Pkwy.
Nashville, TN 37243-0493

**ELIZABETH T. RICE**
District Attorney General

**MARK DAVIDSON**
Asst. District Attorney General
Criminal Justice Complex
Ripley, TN 38063


OPINION FILED:_____


**AFFIRMED**


JOHN H. PEAY,
Judge

## O P I N I O N

The petitioner was indicted on charges of especially aggravated kidnapping, especially aggravated robbery, escape, aggravated assault, and theft. On October 15, 1993, without the benefit of a plea agreement, the petitioner pled guilty to especially aggravated kidnapping, especially aggravated robbery, and escape. The State dismissed the remaining charges. After a hearing, the trial court sentenced the petitioner to thirty years for the especially aggravated kidnapping, thirty-seven years for the especially aggravated robbery, and four years for the escape. The first two sentences are concurrent, but the four year sentence is consecutive.

In September 1995, the petitioner filed a pro se petition for post-conviction relief. Counsel was appointed and three amended petitions were filed. After a hearing, his claim for relief was denied. It is from this denial that he now appeals. The petitioner first claims that his due process rights were violated by the multi-count indictment. He further claims that he received ineffective assistance of counsel in that his counsel failed to file a written motion to dismiss a portion of the indictment and that his counsel failed to adequately investigate his case. After a review of the record, we find no merit to either of these claims. Accordingly, we affirm the judgment of the court below.

In May 1993, the petitioner was an inmate at Fort Pillow Minimum Security Annex. He had been assigned to work as a parts stock clerk in the nearby high security annex under the supervision of a prison employee. On May 14, the defendant struck his supervisor approximately eight times with a pipe wrench. He then ordered the supervisor to surrender his car keys and his clothing. The supervisor did as instructed, and the petitioner then tied the supervisor's hands and feet and left him bleeding and badly injured. The supervisor was able to free his hands but could not remove the restraints

2

on his feet. He hopped outside and yelled for help. Prison guards answered his call for help and alerted prison officials of the petitioner's escape. The petitioner was apprehended shortly thereafter.

As his first issue, the petitioner argues that his due process rights were violated by the multi-count indictment. He argues that under State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), he should not have been indicted for both especially aggravated kidnapping and especially aggravated robbery because the especially aggravated kidnapping was "essentially incidental" to the especially aggravated robbery. Thus, he alleges, to convict him of both counts is a violation of his due process rights.

However, because he pled guilty to the charges, he cannot now directly attack the indictment in his request for post-conviction relief. "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). A plea that is entered voluntarily, understandingly and intelligently constitutes a waiver of all procedural and constitutional defects in the proceedings that may have occurred prior to the entry of the plea. State v. Turner, 919 S.W.2d 346, 354 (Tenn. Crim. App. 1995). Thus, the petitioner has waived this issue and he cannot now complain that the indictment was defective.

The petitioner can, however, complain that his counsel was ineffective for not challenging the indictment and for not seeking to have one count dismissed under Anthony. This is essentially what the petitioner complains about in his second issue. He

3

claims that his counsel was ineffective because she failed to file a motion to dismiss the especially aggravated kidnapping charge.

In reviewing the petitioner's Sixth Amendment claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim of ineffective counsel, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and that this performance prejudiced the defense. There must be a reasonable probability that but for counsel's error the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 692, 694 (1984); Best v. State, 708 S.W.2d 421, 422 (Tenn. Crim. App. 1985).

To satisfy the requirement of prejudice, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See Hill v. Lockart, 474 U.S. 52, 59 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

At his post-conviction hearing, the petitioner testified that he never denied that the incident at the prison had occurred. He simply felt that he should not have been charged with multiple counts for the single episode. He further testified that he was aware of the Anthony doctrine and that he and his counsel had discussed the possibility of dismissing the especially aggravated kidnapping count. He also testified that he understood what it meant to plead guilty and that it had been his decision not to go to trial.

4

The petitioner's trial counsel, Julie Pillow, testified at the post-conviction hearing that she and the petitioner had discussed the number of charges on several occasions. She testified that she had planned to make the Anthony argument on the day of the trial. Ultimately, the petitioner decided to plead guilty on the day for which the trial was set. Ms. Pillow admitted that her failure to file a written motion may have been an oversight on her part. However, she thought the trial judge would only rule on such a motion after hearing the proof of the case and that waiting to file the motion was not inappropriate. Ms. Pillow also testified that on the day the petitioner entered his plea, she attempted to work out the kidnapping and robbery charges, but that she was unsuccessful. Additionally, she testified that she and the State had agreed to an earlier plea agreement whereby the petitioner would plead guilty to especially aggravated robbery and escape only. However, the trial court judge refused to accept such a plea.

In its findings of fact, the post-conviction court concluded that Ms. Pillow and the petitioner had discussed Anthony and its implications on numerous occasions and that Ms. Pillow was prepared to argue at trial that the especially aggravated kidnapping charge should be dismissed. The court then concluded that Ms. Pillow's failure to file an Anthony motion was not prejudicial because the especially aggravated kidnapping charge would not have been dismissed. The court found that "the kidnapping did not begin until after the robbery victim had been beaten and subdued. Thereafter, the petitioner tied up the victim in order to facilitate his escape."

In post-conviction relief proceedings, the factual findings of the trial court in hearings "are conclusive on appeal unless the evidence preponderates against the judgment." State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983). We see no reason to disturb the court's findings of fact. Furthermore, we accept the court's

5

conclusion of law after a careful application of the principles of Anthony to the facts of this case.

In Anthony, two criminal cases were consolidated in which each defendant had been convicted of armed robbery and aggravated kidnapping as a result of a single incident. The Tennessee Supreme Court addressed the issue of whether either defendant's due process rights had been violated when he was convicted of these two crimes. The Court formulated the following test to determine whether each conviction can stand on its own:

> [W]hether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction. . . . [O]ne method of resolving this question is to ask whether the defendant's conduct 'substantially increased [the] risk of harm over and above that necessarily present in the crime of robbery itself.'

817 S.W.2d at 306 (citation omitted). In Anthony, the Court found that the kidnapping convictions of the two defendants could not stand on their own because none of the victims were subjected to any substantially increased risk of harm in addition to that harm which was necessarily present in the crime of robbery itself. 817 S.W.2d at 307. None of the victims was in any way harmed. In one case, the victims were placed in a restroom, and in the other case, one group of victims was held inside a restaurant while another group was detained behind the restaurant. None of these detentions increased the victims' risk of harm beyond the robbery itself.

In the present case, the petitioner repeatedly struck his supervisor on the head with a pipe wrench. The petitioner then stole the supervisor's clothes and car keys

6

before tying the supervisor's hands and feet. The petitioner left the supervisor bleeding from wounds on his head and ear. Because of his injuries, the supervisor later received sixty-four stitches. The fact that this victim's hands and feet were bound certainly substantially increased the risk of harm in that he would be unable to seek assistance. Thus, we conclude that the petitioner's conduct substantially increased the risk to the supervisor beyond that risk necessarily present in the robbery itself. See State v. Rolland, 861 S.W.2d 840 (Tenn. Crim. App. 1992)(finding a substantial increase in risk of harm where victims were locked in restaurant freezer). Independent prosecution for especially aggravated kidnapping is warranted in this case.

It is unnecessary for us to determine whether Ms. Pillow's failure to file a motion to dismiss the especially aggravated kidnapping constituted ineffective assistance of counsel since the petitioner obviously cannot prove the prejudice prong of the Strickland test. The petitioner was not prejudiced by his counsel's failure to file a motion because such a motion would not have been successful. This issue is without merit.

As the petitioner's final argument, he contends that his trial counsel was ineffective because she failed to adequately investigate his case. Specifically, he alleges that she failed to interview a witness who would have testified that the petitioner was under duress when he escaped from the prison. At the post-conviction hearing, the petitioner testified that he had told Ms. Pillow about a prison disciplinary hearing in which he had testified on behalf of a fellow inmate. As a result of this testimony, the petitioner said he had been harassed in the prison and had been assigned tasks different from his normal work assignments.

William Crockett, the inmate that was involved in the disciplinary hearing,

7

testified at the petitioner's post-conviction hearing that Ms. Pillow never contacted him about testifying if the petitioner went to trial. He further testified that if she had, he would have told her about the problems he and the petitioner had had in regard to the safety of their work at the prison and his resulting disciplinary hearing. He further testified that he and the petitioner had been told to do their work or "suffer the consequences."

Ms. Pillow testified that she and the petitioner had discussed Crockett and that she had determined that his testimony would not support a defense of duress. She testified that she based this decision on the facts related to her by the petitioner, who never indicated that he felt he was in danger of imminent serious bodily injury if he remained in prison.

The post-conviction court found that Ms. Pillow correctly determined that a defense of duress could not be supported by Crockett's testimony. Thus, the fact that she did not interview him was not ineffective assistance of counsel. We agree with this conclusion. Crockett's testimony would have added very little to the petitioner's case. We cannot conclude that the petitioner was in any way prejudiced by the fact that Crockett was not interviewed. This issue is without merit.

The petitioner's complaints that his right to due process and his right to effective assistance of counsel were violated are without merit. The ruling of the court below is affirmed.

 

                                   JOHN H. PEAY, Judge

CONCUR:

_____

JOE B. JONES, Judge



_____

JOE G. RILEY, Judge